IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

OCT 2 7 2004

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

|  |  |
|---|---|
| DE TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:04CV00628 |
| ) | |
| v. ) | Judge Glen E. Conrad |
| ) | |
| DELL, INC., ) | Magistrate Judge _____ |
| ) | |
| Defendant. ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, and for its Complaint against Defendant, states and alleges as follows:

### THE PARTIES

1. Plaintiff, DE Technologies, Inc. ("DE Technologies") is incorporated in the State of Delaware, and has places of business at 1715 Pratt Drive, Suite 3500, Blacksburg, Virginia 24064; 11921 Freedom Drive, Suite 550, Reston, Virginia 20190; and 2332 Marie-Victorin Boulevard, Longueuil, Quebec J4G 1B4, Canada.

2. Defendant, Dell, Inc. ("Dell"), is incorporated in the State of Delaware with its principal place of business at One Dell Way, Round Rock, Texas 78682.

### JURISDICTION AND VENUE

3. This is a claim of patent infringement arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 101, *et seq.*, and specifically U.S.C. §§271, 282-285.

4.  This Court has exclusive jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) for infringement of United States Patent No. 6,460,020 ("the '020 Patent") entitled "Universal Shopping Center for International Operation." (Exhibit A, attached hereto.)

5.  DE Technologies developed its patented technology and has a place of business in this District.

6.  Dell regularly transacts business in this District by, among other things, selling computer hardware and software systems to residents of this District.

7.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b), as Dell resides in and is subject to personal jurisdiction in this District as a result of transacting business in this District.

8.  This Court has personal jurisdiction over Defendant pursuant to Virginia's long-arm statute, codified at V.A.C. § 8.01-328.1.

## GENERAL ALLEGATIONS

### DE Technologies Development of the Technology

9.  DE Technologies was established in March 2001 when the former DE Technologies LLC, founded in this District in 1996 by Ed Pool and Doug Mauer, was incorporated. DE Technologies LLC was formed to consolidate the separate operations of Universal Shopping Service, Inc. (controlled by Mr. Pool) and Biznet Technologies (owned by Mr. Mauer), both of which were formed and transacted business in this District.

10. DE Technologies was established to develop, test, and later sell to large corporations, Small and Medium-Size Enterprises (SMEs), the United States Government, and

{RKE# 0890727.DOC-1, 107799-00001-01}   2

general consumers a computer system to conduct international commercial transactions for the selling and purchase of goods over the Internet, Intranet, and other computer-to-computer systems. This development and testing took place primarily in Blacksburg and Union Hall, Virginia.

11.     DE Technologies filed a provisional patent application with the United States Patent and Trademark Office ("PTO"), which like the '020 patent, was entitled "Universal Shopping Center for International Operation," U.S. Patent Application No. 60/033,984 on December 30, 1996.

12.     On December 29, 1997, DE Technologies filed a non-provisional patent application with the PTO claiming priority to U.S. Patent Application No. 60/033,984 (the DE Technologies Application). The DE Technologies Application was assigned Serial No. 08/999,297, was entitled "Universal Shopping Center for International Operation," and named Ed Pool and Doug Mauer as inventors.

13.     The inventors, Ed Pool and Doug Mauer, assigned their rights in the DE Technologies Application to DE Technologies.

14.     Between 1996 and 2000 DE Technologies, as assignee of the technology described in the DE Technologies Application, created a proof of concept and integration testing site in this District on the Internet under the name Ushop and located at the URL http://www.ushop.com. (Exhibit B, attached hereto). From 1997 to present, this proof of concept and integration testing site, as well as DE Technologies own website http://www.detechnologies.com, were accessed by numerous individuals, corporations and

governmental authorities interested in performing international commercial transactions over the Internet or Intranet for themselves or their clients.

15.  The Ushop and/or the DE Technologies websites were accessed by Dell between 1997 and 2000.

16.  In 1998, DE Technologies was awarded a United States Department of Commerce contract, Task Order No. 2051-056-001, to be administered by the LEADS Corporation. DE Technologies was to supply an international e-commerce pilot system to the United States Foreign Commercial Service for its SME community (exceeding 10,000 companies). The pilot system was to be based on the technology described in the DE Technologies Application. In addition to developing the pilot system, DE Technologies was required to, and did conduct educational seminars for the Field Trade Specialists employed by the U.S. Foreign Commercial Service.

17.  DE Technologies has been recognized for developing its technology for processing sales globally using the Internet. DE Technologies pioneered software implementing procedures for the preparation and filing of export/import documents, freight, insurance, titles, letters of credit, proforma invoices, and bills of lading, all as described in a college textbook entitled, <u>International Business: The Challenge of Global Competition</u>, by Donald Ball, et al. (Exhibit C, attached hereto.)

18.  DE Technologies' development of its invention and successful efforts to obtain the '020 Patent have been subject to media coverage in this District, including the October 7, 2002 issue of the <u>Potomac Tech Journal</u>, and the July 9, 2000 issue of <u>The Roanoke Times</u>. (Exhibits D and E, attached hereto.)

{RKE# 0890727.DOC-1, 107799-00001-01}                4

19. On June 6, 2000, DE Technologies issued a press release regarding the original decision by the PTO to issue a patent on the DE Technologies Application, stating, among other things, the technology "will enable any size business to import and export products from any foreign country using the Internet." (Exhibit F, attached hereto.)

20. The intellectual property law community also recognized the potential significance of the DE Technologies Application at the time it was originally decided by the PTO that a patent would issue. In the November 2000 issue of Intellectual Property Today, a publication widely read by intellectual property lawyers, the question was asked, "Who will own the next "blockbuster patent" covering an e-commerce business model?" (Exhibit G, attached hereto.)

21. After DE Technologies' development efforts, large software companies and middleware suppliers began modifying business organization or Enterprise Resource Planning (ERP) software utilizing the Internet and Intranets to complete international commercial transactions. These third party activities mimicked the functionality of the Ushop website, the Borderless Order Entry System (BOES) and the Electronic Commerce Backbone System (ECBS) technology described in the published DE Technologies Application.

22. After DE Technologies' development effort, Dell began to utilize the Internet for international commercial transactions using backend and middleware software indiscernible to the ultimate purchaser. The software used for these international commercial transactions was either acquired from third party software providers and then customized for Dell's own computer systems or developed by Dell.

23.     Since DE Technologies developed its technology and filed their applications, it is estimated that Dell now processes over 4,500 export transactions on a daily basis and screens over 70,000 export transactions per day from the United States alone. Dell is generating more than 50 million dollars per day in sales from their worldwide websites, a portion of which are international computer-to-computer transactions. (Exhibit H, attached hereto).

### The PTO Examinations of the DE Technologies Application

24.     On May 17, 2000 the PTO issued a Notice of Allowance for the DE Technologies Application. DE Technologies paid the issue fee and the application was sent to the PTO Publication Branch where it was placed in the printing cue with a prospective issue date of September 13, 2000.

25.     The DE Technologies Application successfully underwent a special examination review in accordance with a new policy directive of the PTO Director Q. Todd Dickinson. This March 2000 directive made mandatory that all business method patent applications undergo a Quality Assurance Review (QAR) by a highly experienced group of patent examiners.

26.     On August 28, 2000 the Wall Street Journal published a major front page article entitled, "A Billion-Dollar Patent?" (Exhibit I, attached hereto.) Following the publication of this article, the PTO withdrew the previously issued May 17, 2000 Notice of Allowance. The PTO assigned the DE Technologies Application to a new technical Art Unit with the specific responsibility of examining business method inventions. As such, a new patent examiner and supervisory patent examiner undertook the examination of the DE Technologies Application. Starting anew and without being bound by the earlier examiners' decisions, they conducted numerous prior art searches and interviews with DE Technologies.

27.     Intimately involved in this second examination of the DE Technologies Application was Art Unit Group Director, John Love, and Supervisory Patent Examiner, Vincent Millin. After satisfying all of these PTO examiners, the DE Technologies Application merited allowance, and the application was sent again for the special Quality Assurance Review (QAR) where the primary examiners' decision to allow the DE Technologies Application to issue as a patent was affirmed. Once this review was concluded the results of the QAR review were again reviewed by the Deputy Commissioner for Patent Examination Policy, Stephen G. Kunin. This second examination and review took nearly two years (October 2000 through September 2002).

28.     Nearly 6 years after filing its first patent application and undergoing one of the most rigorous reviews ever documented in the PTO, DE Technologies was issued the '020 Patent on October 1, 2002.

## **Dell's Infringing Activities**

29.     Dell designs, purchases, develops, manufactures, markets, sells and supports a range of computer systems and services, most of which are customized to customer requirements.

30.     Dell's products and services include enterprise systems for businesses (servers, storage and networking products, and workstations), client systems (notebooks and desktops), software and peripherals, transactions service and support programs.

31.     From its U.S. and foreign websites (both Internet and Intranet), Dell purchases, markets and sells its products and services directly to international buyers (foreign and U.S. citizens), which include large corporations, governments, small and mid-sized companies, and foreign consumers throughout the world.

32. Dell procures parts, subassemblies and finished goods directly from foreign suppliers utilizing a computer-implemented process for carrying out an international commercial transaction and redistributes finished goods utilizing a computer implemented process for carrying out international commercial transactions.

33. Dell's system is so efficient that it receives additional economic benefits by gaining negative cash conversion cycles. As a result, Dell customers pay Dell before it has to pay its foreign suppliers and finished goods producers.

34. Dell has claimed that these computer-operated systems supplied by middleware companies reduced acquisition cycle times by 62 percent and alleviated operational costs by 61 percent. (Exhibit J, attached hereto.)

35. Dell operates a dedicated Internet/Intranet for its parts and finished goods suppliers.

36. Dell initiates the international commercial computer sales transactions and procurements through a combination of software programs that integrate a number of complex processes, which are unique to international transactions.

37. Dell's software programs for conducting international commercial transactions are achieved by integrating the following tasks:

    a. Selecting a foreign country and its currency (Exhibit K, pages 1 and 2, attached hereto);

    b. providing a menu of products (in a predetermined or selected language) from which buyers can select one or more products (Exhibit K, page 2, attached hereto);

c.  accessing databases which includes a price for the product, a government mandated product code based upon an international goods classification system, duties tariff schedule, taxes (GST, PST, and VAT where applicable), shipping and handling costs depending on the destination and internationally classified points of sale known as International Commercial ("INCO") Terms;

d.  calculating the costs of moving the ordered product(s) to the point of sale destination (Exhibit K, pages 35–38 and 50–52, attached hereto);

e.  calculating the cost of the transaction to provide the buyer a delivered duty paid (DDP) price, including the price of the product(s) (Exhibit K, pages 50-52, attached hereto);

f.  receiving an order for the product(s) (Exhibit K, pages 52–62, attached hereto);

g.  confirming the availability of funds to pay for the order (Exhibit K, pages 46 – 48, attached hereto);

h.  means for generating an electronic record including the contents of a commercial invoice to facilitate passage of the product(s) to the destination (Exhibit K, pages 35–41 and pages 46–48, attached hereto); and

i.  producing the contents of a commercial invoice as defined in information required by the U.S. federal law (19 CFR §§141.86 through 141.89, and 141.61(e)) or as required by the government of the importing country.

38.  Employees of Dell viewed DE Technologies' proof of concept and testing site formerly located at http://www.ushop.com between 1997 and 2000. The Ushop URL was sold in

2000. Specifically, Dell employees were able to and did access the web site http://www.ushop.com.

## COUNT I – PATENT INFRINGEMENT

39. DE Technologies incorporates paragraphs 1-38 of its Complaint as though fully set forth herein.

40. DE Technologies is the owner of the entire right, title and interest in and to the '020 Patent.

41. The '020 Patent claims a computer system for facilitating international computer-to-computer commercial transactions by integrating certain complex functions enabling for international purchases of goods over the Internet. Those functions include determining a total cost of the particular transaction including, when applicable (determined by the agreed upon international point of sale), carriage, duties, foreign taxes, and other governmental charges. The invention of the '020 Patent calculates charges for transport and international shipment of goods, creates complex import and export documents (both commercial and governmentally regulated), exercises reasonable care in complying with international trade laws and verifies authorization of funds for payment.

42. Dell implements the technology described and claimed in the '020 Patent in conducting its international business, both import and export.

43. Upon information and belief, Dell is liable for direct, contributory and inducing infringement of U.S. Patent No. 6,460,020, pursuant to 35 U.S.C. §§ 271.

44. DE Technologies has been irreparably damaged by Dell's foregoing infringement of the '020 Patent.

{RKE# 0890727.DOC-1, 107799-00001-01}    10

45.  DE Technologies is entitled to recover damages adequate to compensate for the infringement.

## COUNT II - WILLFUL PATENT INFRINGEMENT

46.  DE Technologies incorporates paragraphs 1 through 45 of its Complaint as though fully set forth herein.

47.  Dell has had knowledge of DE Technologies and its international commercial transaction technologies as a result of accessing the Ushop.com websites between 1997 and 2000.

48.  Furthermore, Dell has been contacted by the business media with respect to DE Technologies and the '020 Patent in an article entitled "Cutting Through a World of Red Tape" which appeared in BusinessWeek Online on June 28, 2000. (Exhibit L, attached.) When specifically asked about DE Technologies, Dell declined comment.

49.  Notwithstanding Dell's interest in the international transaction technology of DE Technologies and their notice of the issuance of the '020 Patent , Dell continues its infringement, which has been willful, deliberate, and with knowledge of DE Technologies' rights under the '020 Patent.

50.  Dell's infringement of the '020 Patent has been willful and DE Technologies is entitled to treble damages pursuant to 35 U.S.C. § 284.

51.  As a result of Dell's willful infringement, this is an exceptional case entitling DE Technologies to its attorneys' fees under 25 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DE Technologies, Inc., prays for judgment that:

A.  A permanent injunction prohibiting Defendant Dell from infringing U.S. Patent No. 6,460,020 as provided by Title 35 U.S.C. § 283.

B.  U.S. Patent No. 6,460,020 be declared valid and has been willfully infringed by Defendant Dell;

C.  An accounting be conducted for damages arising out of Defendant's infringement of U.S. Patent No. 6,460,020 commencing October 1, 2002 through present;

D.  Plaintiff DE Technologies be awarded treble damages for willful infringement as provided by Title 35 U.S.C. § 284.

E.  Plaintiff DE Technologies be awarded its attorneys' fees pursuant to 34 U.S.C. § 285, costs, and related expenses in this action;

F.  Plaintiff DE Technologies be awarded pre-judgment interest; and

G.  Plaintiff DE Technologies be awarded such other and further relief as this Court may deem necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff DE Technologies hereby demands a trial by jury of all issues so triable.

Date: October 27th, 2004

DE TECHNOLOGIES, INC.

By its attorneys,

*[signature]*

William B. Poff (VSB No. 03477)
Matthew P. Pritts (VSB No. 34628)
James R. Creekmore (VSB No. 36246)
WOODS ROGERS PLC.
10 South Jefferson Street, Suite 1400
Roanoke, VA  24038-4125
Telephone:  (540) 983-7649
Fax:             (540) 983-7711

Of Counsel:

Douglas J. Williams, MN Reg. No. 117,353
Thomas Leach, MN Reg. No. 311,844
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone:  (612) 332-5300

Gregg I. Anderson, CO Reg. No. 9366
Jon R. Trembath, MN Reg. No. 292,163
MERCHANT & GOULD P.C.
1050 17th Street, Suite 1950
Denver, Colorado 80265
Telephone:  (303) 357-1670
Facsimile:   (303) 357-1671