IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **DE TECHNOLOGIES, INC.,** ) | | |
|     **Plaintiff,** | ) | Civil Action No.: 7:04cv00628 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **DELL INC.,** | ) | By: PAMELA MEADE SARGENT |
|     **Defendant** | ) | United States Magistrate Judge |

This case is before the undersigned on defendant's motion to compel production of certain documents withheld from discovery by the plaintiff under a claim of either attorney-client privilege and/or the work product doctrine, ("Motion") (Docket Item No. 245), the plaintiff's brief in opposition, (Docket Item No. 250), and the defendant's reply brief in support, (Docket Item No. 256). Oral argument was heard on the motion on June 27, 2006. Having considered the Motion and the written and oral arguments and representations of counsel, and based on the reasoning set forth below, the Motion will be granted.

*I. Factual Background*

DE Technologies, Inc., ("DE Tech"), filed this suit against Dell Inc. alleging that Dell has infringed two patents it holds. In the course of discovery, DE Tech identified Dr. Hugo Blasdel as a fact witness. On April 20, 2006, Dell deposed Blasdel. Blasdel, through an affidavit offered by DE Tech, has stated that he was first introduced to DE Tech co-founder and chairman of the board, Benjamin Edward "Ed" Pool, in approximately 1999 or 2000. (Ex. B to Docket Item No. 251, ("Blasdel

-1-

Affidavit"), at 1.) During his deposition testimony, Blasdel testified that he has never been an employee of DE Tech. (Ex. A to Docket Item No. 251 and Docket Item No. 267, ("Blasdel Deposition"), at 31-32.) Blasdel stated that he understood his role in this litigation was as a fact witness. (Blasdel Deposition at 221.) Blasdel has had one contract with DE Tech, which was to draft a "Conceptual Plan" on the future of DE Tech's product and/or patents. (Blasdel Deposition at 32.) This Conceptual Plan was completed in December 2000 for which he was paid $5,000.00. (Blasdel Deposition at 56, 66.) DE Tech has not argued that this document authored by Blasdel is privileged and has produced this document in discovery. Blasdel also prepared and submitted two declarations to the Patent and Trademark Office for DE Tech, and he prepared a summary of definitions of "international invoice" used in support of DE Tech's patent prosecution efforts in October or November 2000. (Blasdel Deposition at 57.) Through his affidavit, Blasdel has stated that his work on these matters was "at the behest" of DE Tech's patent prosecution attorney, Bruce Sunstein. (Blasdel Affidavit at 2.) The record, however, contains no evidence that Blasdel was ever hired or retained by DE Tech's counsel.

In 2005, Blasdel became a .5 percent shareholder of DE Tech. (Blasdel Deposition at 64.) According to Blasdel, he was given these shares in DE Tech in exchange for the services he has provided to DE Tech over the years. (Blasdel Deposition at 65.) Blasdel described his role with DE Tech over the years as "sort of a unpaid, part-time supporter." (Blasdel Deposition at 66.) Blasdel also stated that most of his communications over the years have been with Edward Pool. (Blasdel Deposition at 72.) Blasdel has stated that that he has "[l]ooked through the litigation stuff as it's come up and offered whatever advice I had." (Blasdel Deposition at 66.)

-2-

In response to discovery requests, DE Tech has produced a privilege log listing a number of documents either drafted by or received by Blasdel which it claims are protected from production by either the attorney-client privilege or the work product doctrine. That privilege log is attached as Exhibit A to the Motion. These documents fall into four categories: (1) documents authored by Blasdel and sent to either an officer, employee or alleged agent of DE Tech or its counsel; (2) documents authored by either an officer, employee or alleged agent of DE Tech or its counsel and sent to Blasdel; (3) documents authored by an officer, employee or alleged agent of DE Tech and sent to its counsel with a copy sent to Blasdel; and (4) documents authored by DE Tech's counsel and sent to an officer, employee or alleged agent of DE Tech with a copy sent to Blasdel.

DE Tech previously advanced a similar claim of privilege to certain documents authored by or received by another third-party, David S. Files. With regard to that claim of privilege, the undersigned, by order dated April 11, 2006, (Docket Item No. 205), denied that claim of privilege and granted Dell's motion to compel the withheld documents. DE Tech has appealed the undersigned's decision on that motion to U.S. District Judge Glen E. Conrad. That appeal remains pending before Judge Conrad.

## *II. Analysis*

The attorney-client privilege, as any privilege, "interferes with the truth seeking mission of the legal process" and, therefore, is not "favored." *U.S. v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996). Therefore, the Fourth Circuit has consistently held that claims of attorney-client privilege must be strictly construed. *In re Grand Jury*

*Proceedings Under Seal v. U.S.*, 947 F.2d 1188, 1190 (4th Cir. 1991). Furthermore, "[t]he burden is on the proponent of the attorney client privilege to demonstrate its applicability." *U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

Typically, a claim of attorney-client privilege may be asserted to protect communications only between an attorney and his or her client. The Fourth Circuit has held:

> [T]he privilege is to be strictly confined within the narrowest possible limits consistent with the logic of its principle. Consonant with this policy, the privilege applies only when the person claiming the privilege has as a client consulted an attorney for the purpose of securing a legal opinion or services ... and in connection with that consultation has communicated information which was intended to be kept confidential.

*In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) (internal citations omitted).

The courts have, in very limited circumstances, extended the attorney-client privilege to protect confidential communications between clients or attorneys and certain third parties. In general, the Fourth Circuit has held that communications with third parties are protected by the attorney-client privilege only if the third party was hired by or worked for an attorney. *See In re Grand Jury Proceedings*, 102 F.3d 748, 752 (4th Cir. 1996); *In re Grand Jury Proceedings*, 947 F.2d at 1190-91. The Fourth Circuit, however, has held that communications between a client and a third party retained by the client are privileged only if the communications were made to facilitate or to assist in the rendition of legal services. *See In re Grand Jury*

-4-

*Proceedings*, 947 F.2d at 1190-91.

At least one district court in this circuit has suggested that the attorney-client privilege should protect communications with a third party only if that third party had a formal "agency relationship" with the client rather than simply a "working relationship" with the client. *See Atwood v.Burlington Indus. Equity, Inc.,* 908 F. Supp. 319, 323 (M.D.N.C. 1995).

Based on the information before the court, it is difficult to define Blasdel's role with DE Tech other than to use his own words: Blasdel was an "unpaid, part-time supporter" of DE Tech. He admits that he was never an employee of DE Tech and that he entered into only one contract for services, services which he completed in December 2000. It appears from the evidence before the court, that Blasdel was merely an acquaintance of Pool, to whom he turned on an ad hoc basis for advice. It further appears that Blasdel admired and was supportive of Pool's business concepts and helped him where he could on an ad hoc basis. Further, there is no evidence before the court that Blasdel was ever hired or retained by DE Tech's counsel. Thus, the evidence before the court does not show that Blasdel's role was such that he should be considered as anything other than an independent third party who, at best, had a "working relationship" with the client. While it does appear that DE Tech, through Pool and others, and its counsel communicated with Blasdel regarding a number of legal matters and/or provided Blasdel with copies of attorney-client communications, the evidence before the court also does not demostrate that these communications occurred to facilitate or to assist in the rendition of legal services. In fact, based on the evidence before the court, it appears most likely that Pool simply

wanted Blasdel to be informed of matters so that he could discuss these matters with him on an ad hoc basis. That being the case, I cannot find that the attorney-client privilege should be extended to cover any communications between DE Tech and/or its counsel and Blasdel. I further find that DE Tech has waived any attorney-client privilege as to any communications between DE Tech and its counsel which were also communicated to Blasdel.

DE Tech also asserts that a number of documents listed on its privilege log are protected from production under the work product doctrine. In this case, it is not clear whether the work product doctrine would protect any of the documents withheld from production in that these documents were not created by or for counsel. Nor is there any evidence before the court that any of these documents were prepared in anticipation of litigation or for trial. Nonetheless, DE Tech claims that each of these documents contains the work product of counsel and, therefore, should be protected from production under the work product doctrine. As with privileged information, the voluntary disclosure of documents to a third party will ordinarily be deemed a waiver of protection for the work product contained in the document. *See Chavis v. N.C.*, 637 F.2d, 213, 223-24 (4th Cir. 1980). In this case, it is undisputed that whatever attorney work product iscontained in these documents was shared with Blasdel in that each of these documents was either authored by or received by Blasdel. That being the case, I find that, assuming these documents do contain attorney work product, any claim of protection by the work product doctrine was waived when this information was provided to Blasdel.

*III. Conclusion*

-6-

Based on the above-stated reasons, the court will grant the Motion and order the production of the withheld documents.

DATED: July 14, 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE